

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## ALEXANDRIA DIVISION

| | |
|---|---|
| **JAMES GREGORY BENNETT** | **CIVIL ACTION NO. 1:07-cv-00616** |
| **-vs-** | **JUDGE DRELL** |
| **LANE LITTON, et al.** | **MAGISTRATE JUDGE KIRK** |

### R U L I N G

Pending before the Court is a Motion for Summary Judgment (Doc. 58) filed by the three remaining Defendants: the City of Pineville ("City"), Cody Griffith ("Officer Griffith"), and Kyle Martin ("Officer Martin") (collectively, "Defendants"). The motion sets forth alternative avenues for dismissal of the claims against some or all of the Defendants. The Plaintiff, James Gregory Bennett ("Mr. Bennett"), asserts that genuine issues of material fact remain as to his claims against all of the Defendants. For the reasons detailed below, the Defendants' motion will be GRANTED IN PART AND DENIED IN PART, and only the claims against the City will be DISMISSED WITH PREJUDICE. Disposition will follow by a separate judgment.

## I.   **Background**

In this excessive force suit, Mr. Bennett seeks damages arising from injuries that he allegedly sustained at the hands of two officers of the Pineville City Police Department ("PPD") on April 9, 2006.[1] That afternoon, Mr. Bennett was arrested at a motel by Alexandria City Police Department ("APD") officers. Mr. Bennett was

---

[1] Some of the relevant events may have taken place in the early morning of April 10. To avoid confusion, however, we will refer only to the evening of April 9.

intoxicated at the time of this initial arrest.  He was booked into the Rapides Parish jail, and was released some six hours later.  Mr. Bennett then began to walk home.

Several hours later, Officer Griffith was patrolling the streets of Pineville - the city adjoining Alexandria - when he came upon two men in a suspicious situation. One of the men was standing and the other was seated on the sidewalk with his pants around his ankles.  As it turned out, the man seated on the sidewalk was Mr. Bennett.  The other man had merely stopped to check on Mr. Bennett.  Officer Griffith approached Mr. Bennett and quickly discerned that he was intoxicated.  After assessing the situation, Officer Griffith arrested Mr. Bennett for disturbing the peace by public intoxication, and transported him to the PPD for booking.

Once they arrived at the PPD, Officer Griffith was joined by Officer Martin, who was already at the police station.  Officer Griffith maintains that Mr. Bennett was "being a bit loud and verbal" when they arrived.  (Doc. 58-4, Exh. B, p. 24).  The officers booked Mr. Bennett and escorted him to the "holding facility," which contains two cells.  A PPD policy requires that detainees surrender any potentially harmful or dangerous items (including shoe laces) before entering the cell.  Pursuant to that policy, the officers instructed Mr. Bennett to remove his shoes.  Mr. Bennett refused to comply.  According to Officer Griffith, he repeated the instruction several times.  Mr. Bennett, however, remained obstinate, telling the officers they would have to take his shoes off themselves.[2]

---

[2]  In his complaint, Mr. Bennett alleges that the officers took him to the ground when he was "unable to untie his shoes."  (Doc. 1, p. 3).  Later, in a Rule 7(a) Reply (Doc. 16), Mr. Bennett alleges that he "declined" the officers' request to remove his shoes.

2

At this point, the officers maintain that they approached Mr. Bennett to take off his shoes, and Mr. Bennett attempted to pull away from them.  In response to Mr. Bennett's resistance, Officer Martin employed an "arm-bar takedown technique" to bring Mr. Bennett to the ground.  During the course of this brief struggle, Mr. Bennett's head struck the floor, injuring him.  Once the officers had Mr. Bennett under control, they removed his shoes, and called fire department emergency medical technicians ("EMTs") to examine his injuries.

The EMTs bandaged Mr. Bennett's head, and the officers then attempted to place Mr. Bennett in one of the holding cells.  According to Officer Griffith, Mr. Bennett was still loud and belligerent at this point, and refused to go into the cell. Therefore, each of the officers grabbed one of Mr. Bennett's arms and escorted him into the cell.  The officers claim that, as they backed out of the cell, Mr. Bennett began to approach them.  Officer Martin then stunned Mr. Bennett with his taser, and both officers left the cell.  Later that night, Mr. Bennett's brother posted bond, and he was released from jail.

Mr. Bennett filed this lawsuit under 42 U.S.C. § 1983, alleging that the officers used excessive force against him by employing the "arm-bar takedown technique" in the process of removing his shoes, and by using a taser against him in the holding cell.  In the pending motion for summary judgment, the Defendants argue that: (1) all claims in this case should be dismissed, because Mr. Bennett has no evidence that excessive force was used against him at any point; (2) alternatively, the claims against Officer Griffith should be dismissed, because there is no evidence that he

used excessive force against Mr. Bennett; and (3) alternatively, the claims against the City should be dismissed, because there is no evidence of a policy or custom which proximately caused Mr. Bennett's injuries.  After carefully reviewing the submissions of both parties, the Court is now prepared to rule.

II.     **Law and Analysis**

    A.     **Summary Judgment Standard**

    Under Federal Rule of Civil Procedure 56(c), the Court will grant a party's motion for summary judgment only if:

> the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

    In conducting this analysis, the Court must construe "all of the evidence and all of the factual inferences from the evidence . . . in a light most favorable to the party opposing the motion."  King Realty Co., Inc. v. Chevron USA, Inc., 575 F.3d 510, 517 (5th Cir. 2009).  Any doubts are likewise resolved in favor of the nonmoving party.  U.S. *ex rel.* Longhi v. United States, 575 F.3d 458, 465 (5th Cir. 2009).  Once the movant has directed the Court's attention to portions of the record which reflect an absence of a genuine issue of material fact, the nonmoving party bears the burden of demonstrating that a genuine issue of material fact exists.  United States v. $ 92,203.00 in U.S. Currency, 537 F.3d 504, 506-07 (5th Cir. 2008).  "However, mere

conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996).

### B.   General Standards Governing Excessive Force Claims

To successfully state an excessive force claim under 42 U.S.C. § 1983, "a plaintiff must show (1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009) (quoting Ontiveros v. City of Rosenberg, 564 F.3d 379, 382 (5th Cir. 2009)).[3] The relevant inquiry relates to the "objective reasonableness" of the officer's conduct, rather than his subjective intent, "and an officer's conduct must be judged in light of the circumstances confronting him, without the benefit of hindsight." Id. The Fifth Circuit has described the "objective reasonableness" standard in this way:

> An injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible-that is, objectively unreasonable under the circumstances. The objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible. The test for reasonableness must consider whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

---

[3]  Excessive force claims are governed by the Fourth Amendment: "'[A]ll claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard.'" Goodman v. Harris County, 571 F.3d 388, 397 (5th Cir. 2009) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989) (internal quotation marks omitted)).

quotations omitted).

To reemphasize, "[e]xcessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009) (quoting Graham, 490 U.S. at 396).  Moreover, arguments by a nonmovant which amount to "conjecture arising from undisputed facts" do not raise genuine issues of material fact in an excessive force case, but discrepancies between an officer's version of events and the accounts of eyewitnesses, for example, may be sufficient to justify a denial of summary judgment.  See Ontiveros, 564 F.3d at 385 (citing Bazan v. Hidalgo County, 246 F.3d 481 (5th Cir. 2001)).

### C.    The Claims Against All Defendants

The Defendants seek dismissal of all of Mr. Bennett's claims, arguing that various sources - including Mr. Bennett's deposition, his answers to requests for admissions, and the deposition of a potential expert witness in the case - confirm that Mr. Bennett has little or no memory of the events of April 9, 2006.  As such, the Defendants maintain that Mr. Bennett will not be able to testify at trial that he did not refuse to remove his shoes, and did not raise his arms threateningly as he approached the officers.  This would force Mr. Bennett to rely only upon his lack of memory to contradict the testimony of the officers.  As the Defendants correctly note, the fact that a witness does not remember a particular event does not create a genuine issue of material fact.  Dickey v. Baptist Mem'l Hosp.-N. Miss., 146 F.3d 262,

6

266 n.1 (5th Cir. 1998).  Because we find that Mr. Bennett offers more than a lack of memory to support his claims, however, we will not dismiss all of Mr. Bennett's claims at this juncture.

        1.    *Mr. Bennett's Deposition*

It is true that Mr. Bennett's deposition is replete with concessions that he cannot recall the details of certain events that took place on April 9, 2006.  Most notable, in the Defendants' view, is Mr. Bennett's inability to remember whether he raised his arms and moved toward the PPD officers in a threatening manner before he was stunned with a taser.  Instead, Mr. Bennett only maintains that he "would not in any aggressive manner try to attack the police," and generally, that the officers assaulted him without justification.  (Doc. 60-3, Exh. A, p. 52).

However, Mr. Bennett did not simply admit that he had no memory of any of the events that gave rise to his claims.  Instead, he stated that although he could not recall the details of which officer did what to him, he could "testify that these two are responsible . . . for the severe assault and beating and the multiple tasering."  (Doc. 60-3, Exh. A, p. 43).  The fact that various details are muddled or confused (and in many instances forgotten) in Mr. Bennett's mind, because of his intoxicated state and/or the speed and confusion of the scuffles, does not warrant dismissal at this preliminary stage.  Moreover, whether Mr. Bennett raised his arms and approached the officers, and generally whether he resisted the officers, is not dispositive of his claims, in and of itself.  It is uncontested that the potential threat that a claimant

posed to officers is a factor that must be considered in any excessive force case.  See Collier, 569 F.3d at 218-19.  However, that factor is but one consideration among many facts and circumstances in this case which must be taken into account.  See id. As such, Mr. Bennett's alleged threatening behavior is relevant, but not decisive.

Counsel for Mr. Bennett also argues that Mr. Bennett's injuries provide circumstantial evidence supporting his claims.  We agree that "in certain cases, circumstantial evidence can be sufficient to withstand summary judgment."  U.S. ex rel. Farmer v. City of Houston, 523 F.3d 333, 340 (5th Cir. 2008).  We also agree that Mr. Bennett suffered relatively severe injuries, which at least raise the specter that the force used by the officers may have exceeded what the circumstances required. Although certain deposition testimony references these injuries, we have no medical records or other competent medical testimony regarding the extent or probable cause of the injuries.  As such, we must accept that the injuries occurred, and draw all reasonable inferences in Mr. Bennett's favor.  See King Realty Co., Inc., 575 F.3d at 517.  The extent of Mr. Bennett's injuries thus militates in favor of denying the Defendants' motion.

Finally, there is a significant dispute of fact regarding how many times Officer Martin made contact with Mr. Bennett using his taser.  Both officers maintain that Officer Martin subjected Mr. Bennett to only one brief drive stun with the taser, after which Mr. Bennett began to back away from them.  However, Mr. Bennett claims that the officers used the taser multiple times, and that, "at one point it was a continuous

8

thing for – it seemed to be, being on the receiving end of it, like it lasted forever."

(Doc. 58-2, Exh. A, p. 43).  Mr. Bennett's memory appears to be clear with regard to this allegation.

Significantly, counsel for Mr. Bennett claims that the PPD failed to disclose a data recovery log from the taser, claiming that the taser malfunctioned and had to be sent back to its manufacturer.  This log apparently would have revealed the number of times that the taser was used, and perhaps the duration of each discharge. Clearly, the manner and extent to which officers used the taser against Mr. Bennett is material to a determination of whether the force applied by the officers was excessive.  More importantly, this question may impact the outcome of the case regardless of whether Mr. Bennett raised his arms, clenched his fists, and approached the officers before being stunned, as it presents the possibility that the officers used excessive force after Mr. Bennett was subdued.  Thus, standing alone, the dispute regarding Officer Martin's use of the taser may warrant a denial of the Defendants' motion.

2.    *Mr. Bennett's Answers to the Defendants' Requests for Admissions*

Second, the Defendants point out that in a response to a motion for summary judgment previously filed in the case, and in answers to requests for admissions, Mr. Bennett admits that he is unable to identify what roles particular officers may have

played in the alleged assault.[4]  Once again, although this concession may impact our apportionment of liability, it does not warrant summary dismissal of all of Mr. Bennett's claims.  It likewise does not change the fact that Mr. Bennett recalls, and testified to, a sufficient quantum of events to at least present a viable excessive force claim.  For the same reasons as noted above regarding Mr. Bennett's deposition, then, we are unpersuaded by the Defendants' argument.

### 3.    *The Deposition of Jack Wright, Jr. ("Mr. Wright")*

Finally, Mr. Wright, a potential expert witness retained by Mr. Bennett, stated that Mr. Bennett told him in an interview that he could not remember some of the events that took place at the police station.  In particular, Mr. Bennett could only tell him "that prior to going to jail that he had not resisted, he was drunk, he doesn't have any recollection of threatening the police or antagonizing them and then there'd [sic] be these gaps where he said he doesn't remember anything."  (Doc. 58-6, Exh. D, p. 29).

These statements appear to be consistent with Mr. Bennett's other written and oral representations, as described previously.  While we recognize that Mr. Bennett's inability to recall certain events may be damaging to his claims, the extent of any such damage is a merit-based issue to be determined by the trier of fact.  Therefore,

---

[4]  Specifically, in his response to the Defendants' motion for summary judgment, Mr. Bennett stated that "he does not know with specificity who did what to him."  (Doc. 29, p. 2).  Additionally, in his answers to the Defendants' requests for admissions, Mr. Bennett stated that "[u]ntil the City of Pineville's employees have given their deposition under oath, plaintiff is not in a position to admit or deny what role or acts any individual may not have participated in directly or indirectly."  (Doc. 58-5, Exh. F, p. 1).

the Defendants' Motion for Summary Judgment (Doc. 58) will be DENIED IN PART as it pertains, in globo, to the claims against all Defendants.

### D.     The Claims Against Officer Griffith

The Defendants next argue that the claims against Officer Griffith should be dismissed because the Defendant is unable to offer any evidence that Officer Griffith actively participated in the alleged assault or misuse of the taser.  As noted above, Mr. Bennett has repeatedly stated that he cannot recall which officer was responsible for which acts during the incident.  But, both officers agree that Officer Martin, not Officer Griffith, took Mr. Bennett to the ground and used a taser to stun Mr. Bennett.[5]

The Defendants' argument presupposes that liability in an excessive force suit is contingent upon making physical contact with the claimant.  That is not the case. Rather, "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under [§] 1983."  Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995).  No one disputes that Officer Griffith was "present at the scene," which leaves open the possibility that he failed to take reasonable measures to prevent the alleged use of excessive force by Officer Martin.  Indeed, deposition testimony given by Mr. Bennett indicates that another officer or group of officers may have "acquiesced," or "st[ood]

---

[5] It is clear from the officers' depositions that Officer Martin used the taser.  Officer Griffith also specifically testified that Officer Martin took Mr. Bennett to the ground. (Doc. 58-4, Exh. B, p. 35). Officer Martin, however, merely testified that Mr. Bennett "was taken to the ground." (Doc. 58-5, Exh. C, p. 13).  Taken in context, Officer Martin's deposition appears to indicate that he alone applied the arm-bar takedown technique, although that fact is not made entirely clear.  Nonetheless, Officer Martin does not dispute that he took Mr. Bennett to the ground.

11

there and allow[ed] someone to be beaten nearly to death." (Doc. 58-3, Exh. A, p.

39).[6] Of course, we express no opinion as to the merits of Mr. Bennett's claim; we

merely find that this factual dispute is sufficient to preclude summary judgment.

Therefore, the Defendants' Motion for Summary Judgment (Doc. 58) will be DENIED

IN PART, and for the time being, Officer Griffith will remain a defendant in the case.

### E.      The Claims Against the City

Lastly, the Defendants seek dismissal of the claims against the City.  Municipal

entities may be considered "persons" subject to liability under 42 U.S.C. § 1983.

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); accord Hampton Co. Nat. Sur.,

LLC v. Tunica County, 543 F.3d 221, 224 (5th Cir. 2008) ("A 'municipality,' which in

this jurisprudence includes other local governmental units such as a county, is a

'person.'").  "Municipal liability under . . . § 1983 requires proof of (1) a policymaker;

(2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is

the policy or custom."  Davis v. Tarrant County, 565 F.3d 214, 227 (5th Cir. 2009).

However, a municipal entity may not be held liable under a theory of respondeat

superior.  Id.  Instead, "the unconstitutional conduct must be directly attributable to

the municipality through some sort of official action or imprimatur; isolated

unconstitutional actions by municipal employees will almost never trigger liability."

Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

---

[6] In this same line of deposition testimony, Mr. Bennett vaguely indicates that both officers may have taken part in the assault. (Doc. 58-3, Exh. A, p. 43).  Once again, he is unable to identify what role each officer may have played.  In any case, we need not reach that conclusion, as it is possible for Officer Griffith to be liable as a "bystander" of sorts.

In this case, Mr. Bennett puts forth three arguments seeking to establish THE City's liability, none of which are availing.  First, Mr. Bennett claims that the officers' use of force must be tested against the reasonable force standard of article 220 of the Louisiana Code of Criminal Procedure in addition to federal law.  However, nothing about that standard (or the various factors subsumed within it) links a policy or custom of the City to the officers' conduct in this case.  This argument is inapposite to the issue of municipal liability.

Second, PPD officers are trained to use a "force continuum" which is contained in the PPD policy manual.  Mr. Bennett claims, in summary fashion, that the force continuum is "woefully inadequate" and "contrary to statute." (Doc. 60-1, p. 12).  In the absence of any reasoning connecting the force continuum to the alleged use of excessive force by the PPD officers, we fail to see the merit of this argument.  The law requires that there be a "'direct causal link' between the policy and the violation." Peterson v. City of Fort Worth, 588 F.3d 838, 848 (5th Cir. 2009) (quoting Piotrowski, 237 F.3d at 580)).  In this case, Mr. Bennett has failed to identify any such link.  No evidence is offered regarding how the use of the force continuum, either generally or in the circumstances of this case, may engender the use of excessive force.  This argument must fail.

Finally, Mr. Bennett argues that the City pays the salaries of PPD officers, purchases their equipment, and issues and approves the use of tasers and other weapons.  These arguments represent precisely the type of "conjecture arising from

13

undisputed facts" which does not suffice to raise a genuine issue of material fact in an excessive force case.  See Ontiveros, 564 F.3d at 385.  Once again, Mr. Bennett fails to establish a link between these practices and the use of excessive force.  Indeed, if the Court were to sanction Mr. Bennett's generalized arguments on this point, any municipality could be saddled with liability for the use of excessive force by officers of its police department without proof of culpability.  That result is untenable under the law governing excessive force claims.  See Piotrowski, 237 F.3d at 578 n.17 ("[T]here must be both municipal culpability  and causation. . . . Culpability includes both the involvement of a municipal policymaker and affirmative municipal action.").

In all, Mr. Bennett's arguments do not satisfy the rigorous measure of compliance with the standards of municipal liability which the Court must require, and which is necessary to avoid imposition of respondeat superior liability upon municipalities.  See James v. Harris County, 577 F.3d 612, 618 (5th Cir. 2009).  None of the arguments establish that any policy or custom maintained by the City was the "moving force" behind the officers' purported misconduct.[7]  Therefore, the Defendants' Motion for Summary Judgment will be GRANTED IN PART as it applies to this issue, and the Mr. Bennett's claims against the City will be DISMISSED WITH PREJUDICE.

---

[7] Counsel's argument that "[t]he policies and customs speak for themselves" is incorrect.  As noted above, the claimant must elucidate a connection between the policies and customs and the alleged constitutional violation.

14

III.    **Conclusion**

For the foregoing reasons, the Defendants' Motion for Summary Judgment

(Doc. 58) will be GRANTED IN PART, and Mr. Bennett's claims against the City will

be DISMISSED WITH PREJUDICE.  However, the Defendants' motion will be DENIED

IN PART as it pertains to Officers Griffith and Martin, and Mr. Bennett's claims

against the officers will move forward.

SIGNED on this _14_ day of July, 2010 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE